FILED

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

98 JUN 26 PM 3: 54

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | | |
|---|---|---|
| **ELADIO RUIZ de MOLINA,** | ] | |
| | ] | |
| Plaintiff(s), | ] | |
| | ] | |
| vs. | ] | CV-96-N-3166-S |
| | ] | |
| **MERRITT & FURMAN INSURANCE,** | ] | |
| **AGENCY, INC., et al.,** | ] | |
| | ] | |
| Defendant(s). | ] | |

ENTERED

JUN 2 6 1998

## MEMORANDUM OF OPINION

## I.   Introduction.

In this diversity action, the plaintiff, Eladio Ruiz de Molina ("de Molina"), asserts a number of state law claims against defendants Worldwide Marine Underwriters, Inc. ("Worldwide Marine"), Bob Luellen ("Luellen"), Jim Stypa[1] ("Stypa"), Merritt & Furman Insurance Agency, Inc. ("Merritt & Furman"), Skip Smith ("Smith"), Schaeffer & Associates International Insurance Brokerage, Inc. ("Schaeffer & Associates"), and La Reunion Francaise SA[2] ("La Reunion"). The Court has subject matter jurisdiction under 28 U.S.C. § 1332, complete diversity of citizenship between the parties.

The Court currently has for consideration defendants Worldwide Marine and Bob Luellen's motion to dismiss, filed April 3, 1998. The motion has been briefed by the parties and is ripe for decision. Because matters outside the pleadings were presented to the

---

[1]   On March 16, 1998, the Court dismissed Mr. Stypa as a defendant in this action, on motion by the plaintiff.

[2]   On February 27, 1998, the Court dismissed La Reunion and Schaeffer & Associates as defendants in this action, on the plaintiff's February 23, 1998 motion.

Court in the defendants' submission in support of their motion to dismiss, the Court on April 7, 1998 converted the motion to dismiss into one for summary judgment as provided in Rule 56 of the Federal Rules of Civil Procedure.[3] *See* Fed. R. Civ. P. 12(b); *see also Fikes v. City of Daphne*, 79 F.3d 1079, 1083 (11th Cir. 1996). Upon due consideration, the motion will be granted and defendants Worldwide Marine and Mr. Luellen will be dismissed as parties to this action.

## II. Findings of Fact.[4]

### A. Procedural Posture and Parties.

1. The plaintiff, Eladio Ruiz de Molina, filed this action on December 4, 1996, against Worldwide Marine, Bob Luellen, Jim Stypa, Merritt & Furman, Skip Smith, Schaeffer & Associates, and La Reunion. The plaintiff is an Alabama resident. *See Complaint*.

2. On March 30, 1997, Merritt & Furman asserted a cross-claim against Worldwide Marine and Bob Luellen. Merritt & Furman amended the cross-claim on January 30, 1998. In that same pleading, Skip Smith was added as a cross-claimant.

---

[3] According to Rule 12(b) of the Federal Rules of Civil Procedure, "If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleadings to state a claim upon which relief can be granted, matters outside the pleadings are presented to and not excluded by the Court, the matter shall be treated as one for summary judgment and disposed of as provided in Rule 56." Fed. R. Civ. P. 12(b).

[4] The facts set out below are gleaned from the parties' submission of facts claimed to be undisputed, their respective responses to those submissions, and the Court's own examination of the evidentiary record. These are the "facts" for summary judgment purposes only. They may not be the actual facts. *See Cox v. Administrator U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994), *cert. denied*, 513 U.S. 1110 (1995).

3.    Worldwide Marine is a corporation incorporated in the State of Michigan with its only office located in Michigan. *See Defendants' Exhibit 5*.

4.    Bob Luellen is a licensed insurance agent and is employed by Worldwide Marine. *See Defendants' Exhibit 3*, at 14-15; 17-18; 44.

5.    Mr. Luellen is and was, at the time of the events made the basis of this lawsuit, a resident of the state of Michigan. *See Defendants' Exhibit Exhibit 3*, at 8.

6.    In 1995 and 1996, Merritt & Furman was an insurance agency with its office located in Pompano Beach, Florida. *See Defendants' Exhibit 2*, at 23; *Defendants' Exhibit 1*.

7.    Skip Smith is a licensed insurance agent, and, in 1995 and 1996, he worked with Merritt & Furman in Pompano Beach, Florida. *See Defendants' Exhibit 2*, at 17-19; 65.

8.    Schaeffer & Associates is an insurance agency and brokerage with its office in Lilburn, Georgia. *See Defendants' Exhibit 4*, at 21-22.

9.    La Reunion is a foreign insurance company. *See Plaintiff's Complaint*.

10.   In February 1998, the plaintiff voluntarily dismissed Schaeffer & Associates and La Reunion. On March 12, 1998, plaintiff voluntarily dismissed defendant Jim Stypa.

**B.    Facts Underlying Plaintiff's Claims.**

3

1. The plaintiff purchased a 1987 Gulfstar Sloop vessel named the Ariel II in June of 1994. *See Plaintiff's Complaint; Defendants' Exhibit 1*, at 21.

2. The Ariel II was moored in Fairhope, Alabama, and was part of a fleet of charter boats managed by Southern Yacht Charters. *See Defendants' Exhibit 1*, at 21-22; 39-40.

3. Insurance for the Ariel II, while it was chartered by Southern Yacht Charters, was procured by McGriff, Seibels & Williams, Inc., an insurance agency in Birmingham. *See Defendants' Exhibit* 1, at 22-24.

4. In August or September 1995, the plaintiff telephoned Skip Smith at his office in Pompano Beach, Florida, to inquire about insurance for the Ariel II if the boat's mooring were changed to Mexico. *See Defendants' Exhibit 1*, at 61-62; 71-72.

5. Skip Smith then obtained a verbal quote for insurance on the Ariel II with a mooring in Mexico from Bob Luellen, who, at that time, was employed with Guba Marine (which is not a party to this action) in Michigan. *See Defendants' Exhibit 2*, at 28-29.

6. The verbal quote was preceded by the facsimile transmission from Skip Smith in Florida to Bob Luellen in Michigan of a "quick quote" form containing certain information on the Ariel II. *See Defendants' Exhibit 2*, at 28-29; 221-222; *see also Defendants' Exhibit* 21.

4

7.   The verbal quote was soon thereafter transmitted to the plaintiff by Skip Smith. *See Defendants' Exhibit 2*, at 28-29.

8.   The plaintiff testified that he understood Skip Smith was making inquiries concerning the insurance with other entities; however, the plaintiff stated that he was never provided the name of any entity with which Skip Smith was dealing. *See Defendants' Exhibit 1*, at 66-67.

9.   Sometime before December, 1995, plaintiff decided to move the Ariel II to Fort Myers, Florida, to be chartered by Vacation Yachts. *See Defendants' Exhibit 1*, at 58; & 46.

10.  In early December 1995, the plaintiff again contacted Skip Smith and requested that insurance be bound on the Ariel II. *See Defendants' Exhibit 1*, at 31; 75-81.

11.  In addition, the plaintiff requested Skip Smith to provide him with a written binder setting forth the coverage obtained. *See Defendants' Exhibit 1*, at 31; 75-81.

12.  Sometime in early December 1995, Skip Smith refaxed the "quick quote" form to Bob Luellen and inquired as to whether the premium would increase if the vessel were moored in Ft. Myers, Florida, instead of Mexico. *See Defendants' Exhibit 2*, at 220-221.

13.  On December 6, Skip Smith in Florida sent a facsimile sheet to Bob Luellen in Michigan requesting that the coverage be bound. *See Defendants' Exhibit 2*, at 42-43.

5

14. Skip Smith claims, that from his office in Florida, he had several phone conversations with Bob Luellen in Michigan concerning the placement of this coverage and that Bob Luellen informed him that a binder could be issued to the plaintiff.[5] *See Defendants' Exhibit 2*, at 40-46.

15. On December 6, 1995, from his office in Florida, Skip Smith sent a binder by facsimile to the plaintiff in Alabama. *See Defendants' Exhibit 1*, at 80-81; *see also Exhibit 1*.

16. The binder indicated that the plaintiff had insurance coverage on the Ariel II effective December 6, 1995. *See Defendants' Exhibit 1*.

17. On December 8, 1995, the plaintiff and others set sail from Fairhope destined for Fort Myers, Florida. *See Defendants' Exhibit 1*, at 95-96.

18. On or about December 9, 1995, the Ariel II was damaged at sea. *See Plaintiff's Complaint.*

19. On December 11, 1995, the plaintiff telephoned Skip Smith in Pompano Beach, Florida, and reported the loss. *See Defendants' Exhibit 1*, at 119-120.

---

[5] These defendants deny that Bob Luellen saw the facsimile requesting that coverage be bound or that Bob Luellen informed Skip Smith that a binder could be issued to the plaintiff. *See Defendants' Exhibit 3*, at 43; 228-229. However, for purposes of this motion, as the defendants concede, the Court must construe the evidence in the non-movants' favor and determine whether such alleged communication confers personal jurisdiction on the Court.

6

20.    Skip Smith thereafter from his office in Florida sent by facsimile a
notice of the claim to Bob Luellen in Michigan and reported the loss.
*See Defendants' Exhibit 2*, at 69-70.

21.    In addition, Bob Luellen and Skip Smith discussed the plaintiff's claim
over the telephone from Michigan and Florida, respectively. *See
Defendants' Exhibit 2*, at 69-71.

22.    On December 11, 1995, Bob Luellen telephoned Schaeffer &
Associates at its office in Georgia and inquired as to whether
coverage could be obtained for the damage to the Ariel II. *See
Defendants' Exhibit 3*, at 59.

23.    Coverage was bound as of December 12, 1995, with an effective date
of December 6, 1995, provided no known or reported losses had
occurred. *See Defendants' Exhibit 4, Exhibit 20*.

24.    The insurance company issuing the coverage was La Reunion. *See
Answer of La Reunion*.

25.    Bob Luellen and Skip Smith had subsequent phone conversations
from Michigan and Florida respectively in which they discussed the
plaintiff's claim. *See Defendants' Exhibit 2*, at 77-78.

26.    Sometime in January 1996, Jim Stypa, an employee of Worldwide
Marine, telephoned the plaintiff and told the plaintiff that he was there
to "help the plaintiff get his boat repaired" and that he was helping
Skip Smith. *See Defendants' Exhibit 1*, at 125-126.

7

27.    The plaintiff also recalls that Mr. Stypa told him that he "probably was still covered by McGriff, Seibels." *See Defendants' Exhibit 1*, at 126-127.

28.    The plaintiff then sent by facsimile to Jim Stypa in Michigan a copy of the certificate of insurance on the Ariel II. *See Defendants' Exhibit 1*, at 145-149.

29.    On or about January 17, 1996, Jim Stypa sent to the plaintiff a draft of a letter which could be sent to McGriff, Seibels to report the loss to the Ariel II. *See Defendants' Exhibit 1*, at 150; *see also Defendants' Exhibit 7*.

30.    Plaintiff had never canceled in writing the fleet coverage on the Ariel II. *See Defendants' Exhibit 1*, at 51-52.

31.    The plaintiff never sent the letter drafted by Jim Stypa, nor did he report the claim to McGriff, Seibels & Williams, Inc. *See Defendants' Exhibit 1*, at 151.

32.    The plaintiff admits that he never suffered any injury as a result of Jim Stypa suggesting that he make a claim with McGriff, Seibels & Williams, Inc., under his prior policy. *See Defendants' Exhibit 1*, at 155.

## C.    Plaintiff's Contacts with Worldwide Marine.

1.    The plaintiff has never had any conversations or contact with Bob Luellen. *See Defendants' Exhibit 1*, at 8, 184-185; 188.

2.     Plaintiff's conversation with Jim Stypa did not occur until after the uninsured damage occurred to the Ariel II on or around December 9, 1995. *See Defendants' Exhibit 1*, at 204.

**D.    Worldwide Marine's Business Activity in Alabama.**

1.     Worldwide Marine does not have an office in Alabama.   *See Defendants' Exhibit 5.*

2.     None of the officers, directors, or employees of Worldwide Marine reside in Alabama. *See Defendants' Exhibit 5.*

3.     Worldwide Marine is not licensed to conduct business in Alabama, and it does not solicit business in Alabama. *See Defendants' Exhibit 5.*

4.     Bob Luellen does not conduct business or solicit business in Alabama. *See Defendants' Exhibit 5.*

5.     Worldwide Marine does not have assets in Alabama, and it does not maintain agents in Alabama for the purposes of selling marine or any other type of insurance. *See Defendants' Exhibit 5.*

6.     Prior to the loss to the Ariel II on December 9, 1995, Luellen and Worldwide had *no communication or business dealings whatsoever with anyone in Alabama concerning insurance for the Ariel II. See Defendants' Exhibit 1*, at 8; 184-185; 188; 204.

**E.    Plaintiff's Claims and Merritt & Furman's Cross-Claims Against Worldwide Marine and Bob Luellen.**

9

1.    Plaintiff's complaint contains seven counts. In Count I, plaintiff alleges that he purchased a policy of insurance from Worldwide Marine and Bob Luellen with an effective date of December 6, 1995. Plaintiff claims that Worldwide Marine and Bob Luellen breached that contract by failing to pay for the damage to the Ariel II.

2.    In Count II of the complaint, plaintiff alleges that Worldwide Marine and Bob Luellen negligently, wantonly, willfully or recklessly denied his claim for benefits due under the policy of insurance obtained with an effective date of December 6, 1995.

3.    Counts III and IV contain claims of fraud. Plaintiff claims that it was represented to him that he had insurance coverage on the Ariel II and that he relied on that representation when he set sail on December 8, 1995.

4.    In Count V of the complaint, plaintiff claims that Worldwide Marine and Bob Luellen acted in bad faith in denying his claim for benefits under the policy of insurance with an effective date of December 6, 1995.

5.    In Count VI, plaintiff claims that Worldwide Marine, Bob Luellen and Jim Stypa conspired to have the plaintiff make a claim with his previous insurer under a policy which allegedly was no longer in effect.

6.     Merritt & Furman's[6] cross-claim contains three counts. The cross-
       claimants allege that, on or about December 6, 1995, Skip Smith was
       informed by Bob Luellen that Merritt & Furman could issue a binder
       to the plaintiff stating that coverage was bound effective December 6,
       1995. The cross-claimants allege that such conduct was negligent
       (Count I); that such conduct amounted to a fraud and a deceit (Count
       II); and, that such conduct constitutes breach of contract.

7.     The telephone conversation forming the basis of all three of the cross-
       claims occurred between Skip Smith in Florida and Bob Luellen in
       Michigan. (Exh. 2, exh. 14).

## III.    Summary Judgment Standard.

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the
pleadings, depositions, answers to interrogatories, and admissions on file, together with
the affidavits, if any, show that there is no genuine issue as to any material fact and that the
moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party
asking for summary judgment "always bears the initial responsibility of informing the
district court of the basis for its motion, and identifying those portions of 'the pleadings,
depositions, answers to interrogatories, and admissions on file, together with the affidavits,
if any,' which it believes demonstrate the absence of a genuine issue of material fact."
*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The

---

[6] The Court will refer to Merritt & Furman and Skip Smith herein simply as "Merritt & Furman" or "cross-claimants."

11

movants can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.* at 323.

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions of file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The nonmoving party need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings. *Celotex*, 477 U.S. at 324. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322.

After the plaintiff has properly responded to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine

whether there is a genuine issue for trial." *Id.* at 249. His guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52; *see also Bill Johnson's Restaurants, Inc. v. N.L.R.B.*, 461 U.S. 731, 745 n.11(1983). However, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249 (citations omitted); *accord Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989). Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. *Anderson*, 477 U.S. at 254; *Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury, and therefore the evidence of the non-movants is to be believed and all justifiable inferences are to be drawn in his favor. *Anderson*, 477 U.S. at 255. The non-movant need not be given the benefit of every inference but only of every reasonable inference. *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

**IV.   Discussion.**

Defendants Worldwide Marine and Bob Luellen seek summary judgment on two alternative grounds: (1) the court lacks *in personam* jurisdiction over them, both nonresident defendants; and, in the alternative, (2) the plaintiff's claims of breach of

13

contract, negligence, bad faith and conspiracy fail to state claims upon which relief can be granted. *See Movant's Initial Submission in Response to Exhibit D of the Court's Order.*

### A.     Personal Jurisdiction.

The personal jurisdiction analysis begins as a two-step procedure. First, personal jurisdiction over a nonresident defendant by a federal court sitting as a diversity court is proper only if authorized by state law. *See Cable/Home Communication Corp. v. Network Productions, Inc.*, 902 F.2d 829, 855 (11th Cir. 1990); *Alexander Proudfoot Co. [World Headquarters L.P. v. Thayer* ], 877 F.2d 912, 919 (11th Cir. 1989). If a basis for personal jurisdiction exists under the forum state's long-arm statute, the federal court then must consider whether the exercise of personal jurisdiction would be consistent with federal due process requirements. The Due Process Clause of the Fourteenth Amendment requires sufficient minimum contacts between the forum state and the nonresident defendant so that "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316, (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, (1940)); *Cable/Home Communication Corp.*, 902 F.2d at 855; *Alexander Proudfoot Co.*, 877 F.2d at 919. Only if both prongs of the analysis are answered in the affirmative may a federal or state court exercise personal jurisdiction over a nonresident defendant. *See id.* at 1514.

In Alabama, the reach of the state long-arm statute is equal to that of the Federal Constitution. *See* Ala. R. Civ. P. 4.2(a)(2)(I); *Horn v. Effort Shipping Co., Ltd.*, 777 F. Supp. 927, 929 (S.D. Ala. 1991). Therefore, in Alabama, the two questions of personal jurisdiction collapse into one, and the only issue is whether a defendant has the "minimum contacts"

14

with the state required for the assertion of personal jurisdiction by the due process clauses
of the United States Constitution as interpreted in *International Shoe* and its progeny. *See
Horn*, 777 F. Supp. at 929.

However, the principle governing this case was established long before shoes,
made in Missouri, were sold in Washington by the International Shoe Company. *See
Brown v. Astron Enterprises, Inc.*, 989 F. Supp. 1399, 1404 (N.D. Ala. 1997). In 1927, the
Supreme Court validated state statutes that permitted the exercise of jurisdiction over
nonresident motorists, without their expressed consent, for the torts they commit on the
highways of the forum state. *See Hess v. Pawloski*, 274 U.S. 352 (1927). These travelers
were said to have given implied consent to a lawsuit wherever they operated this
"dangerous instrumentality." *Hess*, 274 U.S. 352. Later statutes extended jurisdiction to
operators of aircraft by nonresidents and even to automobile owners who never entered
the forum state, but authorized use of the car within the forum state by another. *See Davis
v. St. Paul-Mercury Indem. Co.*, 294 F.2d 641 (4th Cir. 1961); *Worthley v. Rockville Leasecar,
Inc.*, 328 F. Supp. 185 (D. Md. 1971).

This principle survived *International Shoe* when the Supreme Court recognized that
sporadic forum activity, even a single act, may suffice as "minimum contact" under certain
circumstances to render the out-of-state defendant subject to personal jurisdiction upon
claims arising out of that activity. *See International Shoe Co.*, 326 U.S. at 318. However,
such a finding of "specific jurisdiction" is appropriate only when the nonresident
defendant's contacts with the forum state arise from, or are directly related to, the cause

15

of action. *See Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994) , *cert. denied*, 513 U.S. 930 (1994).

To sustain a claim that these defendants had minimum contacts with Alabama to support specific personal jurisdiction, the plaintiff and Merritt & Furman must present evidence of each of the following three criteria:

> First, the contacts must be related to the plaintiff's [and cross-claimants'] cause of action or have given rise to it. Second, the contacts must involve `some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum...thus invoking the benefits and protections of its laws.' Third, the defendant's contacts with the forum must be `such that [the defendant] should reasonably anticipate being haled into court there.'

*Francosteel Corp. v. M/V Charm*, 19 F.3d 624, 627 (11th Cir. 1994) (quoting *Vermeulen v. Renault, U.S.A., Inc.*, 965 F.2d 1014, 1016 [11[th] Cir. 1992]).

The Court's focus in determining whether the defendants have minimum contacts with the forum is whether they had fair warning that their actions would subject them to the jurisdiction of this Court. *See Madara v. Hall*, 916 F.2d 1510, 1516 (11th Cir. 1990). Moreover, the conduct that is relevant is that of Worldwide Marine and Bob Luellen, not the unilateral activity of the plaintiff or the other defendants. *See id.* at 1516. "Random, fortuitous, or attenuated contacts" will not satisfy the test. *Id.* The Eleventh Circuit Court of Appeals has held that the inquiry into minimum contacts involves an element of foreseeability; however, the Court has cautioned that the foreseeability test is "*not* the ability to see that the acts of third persons may affect the forum, but rather that the

defendant's own purposeful acts will have some effect in the forum." *Id.* at 1517. (emphasis in original).

In the present case, the plaintiff's claims of fraud and Merritt & Furman's cross-claims do not arise from even one single contact that Worldwide Marine or Bob Luellen had with Alabama. Instead, the Court is persuaded by the defendants that any activity on the part of Worldwide Marine and Bob Luellen from which these claims allegedly arise was with Skip Smith of Merritt & Furman in Florida.

The plaintiff claims that, in August 1995, he called Skip Smith *in Florida* to obtain a quote for insurance on the Ariel II. Skip Smith then called Bob Luellen *in Michigan* and faxed documents to him so as to obtain a quote. At that time, Bob Luellen worked for Guba Marine, Worldwide Marine having not yet been formed. The quote was passed from Bob Luellen *in Michigan* to Skip Smith *in Florida* and then provided by Skip Smith to the plaintiff in Alabama. Before December 1995, the plaintiff changed his mind and decided to moor the Ariel II in Ft. Myers, Florida. In December 1995, Ruiz called Skip Smith *in Florida* and requested that the insurance be bound on the Ariel II. Skip Smith *in Florida* allegedly called Bob Luellen *in Michigan*, who had left Guba to work for Worldwide Marine, and allegedly requested that such insurance be bound. On December 6, 1995, Skip Smith *in Florida* issued a binder to the plaintiff. The plaintiff suffered a loss to the Ariel II in the Gulf of Mexico while sailing the vessel from Fairhope, Alabama, to Ft. Myers, Florida.

In Counts III and IV of the complaint, the plaintiff claims that the alleged conduct of Worldwide Marine and Bob Luellen amounts to fraud. Merritt & Furman, also charged with fraud by the plaintiff, seeks indemnity from Worldwide Marine and Bob Luellen for the

claims of the plaintiff. The claim of indemnity is based upon three causes of action: breach of contract to procure insurance, negligent failure to procure insurance, and misrepresentation that such insurance was procured.

It is undisputed in this case that the plaintiff had absolutely *no contact* with Bob Luellen or Worldwide Marine concerning his purchase of insurance for the Ariel II. Worldwide Marine was not even a legal entity until December 5, 1995, the day before Smith issued the binder to the plaintiff. The evidence indicates that the plaintiff never talked to Bob Luellen or anyone else at Worldwide Marine about procuring insurance for the Ariel II. In fact, plaintiff apparently did not even know of the existence of Luellen or Worldwide Marine prior to the loss on December 9, 1995. The plaintiff arguably had no idea through whom Skip Smith was dealing to procure the insurance. Instead, all the plaintiff's contacts were with Skip Smith *in Florida*. Skip Smith then allegedly contacted Bob Luellen *in Michigan* to obtain a quote for the insurance and then allegedly to bind the insurance. The Court finds there was no activity in Alabama by these defendants from which the fraud claims and cross-claims arise, despite co-defendants Merritt & Furman and Skip Smith's protestations to the contrary. *See Vandenbossche v. First Nat'l Bank of Rochester*, 735 F. Supp. 405 (M.D. Fla. 1990) (holding that motion to dismiss for lack of personal jurisdiction was due to be granted where defendant had no contact with plaintiff as plaintiff dealt exclusively with an intermediary). Accordingly, the Court concludes here that no specific personal jurisdiction exists over Worldwide Marine or Bob Luellen.

In its responsive submission, co-defendants Merritt & Furman and Skip Smith argue in one sentence that the facts in this case support the exercise of general personal

jurisdiction over Worldwide Marine and Bob Luellen. *See Memorandum in Opposition to Motion to Dismiss*, at 3. As the movants point out, a court can exercise general personal jurisdiction over a non-resident when the cause of action does not relate to the defendant's contacts with the state, if the defendant has "continuous and systematic general business contacts with the state." *Seymour v. Bell Helmet Corp.,* 624 F. Supp. 146, 148 (M.D. Ala. 1985) (quoting *Helicopteros,* 466 U.S. at 416). The standard for determining whether general personal jurisdiction exists is an even more stringent standard than that for deciding specific personal jurisdiction. *See id.* In the *Seymour* case, the court concluded that general personal jurisdiction did not exist even though the out of state company sold helmets in Alabama through two retailers. The sale of helmets in Alabama was insufficient to establish systematic business contacts with the state. In *Borg-Warner Acceptance Corporation v. Lovett & Tharpe, Inc.,* 786 F.2d 1055, 1057 (11th Cir. 1986), the Eleventh Circuit Court of Appeals considered various factors in determining that general personal jurisdiction did not exist, including the situs of the corporation; whether any officers of the corporation reside in Alabama; whether the corporation is licensed to do business in the state; whether the corporation has an office in the state; whether the corporation solicits business in the state; whether the corporation provides services in the state; and, generally any activity of the corporation in the state. *See id.*

Merritt & Furman asserts that the receipt of eight applications for insurance from Alabama residents *after* Worldwide Marine and Mr. Luellen were served with process justify the exercise of general personal jurisdiction. Such contacts, however, do not create general personal jurisdiction *at the time the complaint was served* on these defendants.

*See Prejean v. Sonatrach, Inc.*, 652 F.2d 1260, 1271 & n. 21 (5th Cir. 1981) (stating that "personal jurisdiction must exist at the time service is made . . ."). Moreover, evidence of the receipt of eight applications is arguably not sufficient to prove general jurisdiction unless that information is compared with the total number of applications taken by Worldwide Marine. *See Seymour v. Bell Helmet Corp.*, 624 F. Supp. 146, 148-49 (M.D. Ala. 1985). No such evidence being submitted, Merritt & Furman has failed to meet its burden to show that the Court has general personal jurisdiction over these defendants.

Finally, the non-movants argue that Worldwide Marine and Mr. Luellen "have waived their rights to assert that this Court lacks personal jurisdiction and to obtain a dismissal on those grounds." *Memorandum in Opposition to Motion to Dismiss*, at 3; *Opponent Eladio Ruiz de Molina's Responsive Submission in Response to Exhibit D of the Court's Order*, at 3-5. The Court views this argument disingenuous in light of the applicable law and the facts of this case.

Worldwide Marine and Mr. Luellen filed their answer on February 4, 1997, and asserted as a defense lack of personal jurisdiction. On May 9, 1997, Worldwide Marine and Mr. Luellen answered the cross-claim filed by Merritt & Furman. Similar to their answer to the plaintiff's complaint, the *first* defense raised in answer to the cross-claim was the Court's lack of personal jurisdiction over them.

After filing answers to the initial pleadings, the parties apparently began the process of scheduling depositions of the plaintiff and defendants which were to be taken in a block of three days. The depositions were set and reset several times resulting in the depositions not being taken until January of 1998. *See Movant's Reply Submission in Response to*

*Exhibit D of the Court's Order*, at 3. Counsel for Worldwide Marine and Mr. Luellen asked several questions during the plaintiff's and Mr. Luellen's depositions pertinent to the personal jurisdiction defense. Indeed, the plaintiff was asked to indicate any contact he had with Worldwide Marine or Bob Luellen prior to the loss to the Ariel II. *See Defendants' Exhibit 1*, at 8; 184-85; & 188. Mr. Luellen was asked whether Worldwide Marine had conducted business in Alabama; whether Skip Smith's request for a quotation for insurance on the plaintiff's vessel was unsolicited; and whether Worldwide Marine had engaged in any action such as to avail itself of the privilege of conducting business in Alabama. *See id.*, at 220-221; 226-27; & 230-31.

After these depositions, Worldwide Marine's and Mr. Luellen's conduct continued to objectively manifest an intent to pursue a dismissal based upon lack of personal jurisdiction. As indicated *supra*, on February 12, 1998, Worldwide Marine and Mr. Luellen answered Merritt & Furman's amended cross-claim, which had been filed after the depositions of the parties, and in that answer included lack of personal jurisdiction as their first affirmative defense. The Court notes that "[a] party that fails to raise a defense of lack of personal jurisdiction at the appropriate time is deemed to have conferred personal jurisdiction on the court by consent." *Pardazi v. Cullman Medical Center*, 896 F.2d 1313, 1317 (11th Cir. 1990); *see also* FED. R. CIV. P. 12(h) (defense of lack of personal jurisdiction is a waivable defense). However, under the facts of the present case, where the motion to dismiss for want of personal jurisdiction was filed only two months after the depositions of the parties had been taken, no waiver occurred.

**V.   Conclusion.**

Accordingly, there is no basis for the exercise of *in personam* jurisdiction over defendants Worldwide Marine and Bob Luellen in the United States District Court for the

Northern District of Alabama under a federal due process analysis. The defendants' motion to dismiss for lack of personal jurisdiction will be granted. The Court will enter an appropriate order in conformity with this memorandum opinion.

Done, this **26** of June, 1998.

EDWIN L. NELSON
UNITED STATES DISTRICT JUDGE