# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

01 JUL 12 PM 3: 28

  . . . . COURT
  . . . OF ALABAMA

| | | |
|---|---|---|
| **ELADIO RUIZ DE MOLINA,** | ] | |
| Plaintiff(s), | ] | |
| vs. | ] | CV-96-N-3166-S |
| **MERRITT & FURMAN INSURANCE AGENCY, INC., et al.,** | ] | |
| Defendant(s), | ] | **CONSOLIDATED WITH** |
| **MERRITT & FURMAN INSURANCE AGENCY, INC., et al,** | ] | |
| Plaintiff(s), | ] | **ENTERED** |
| vs. | ] | **JUL 1 2 2001** |
| **WORLDWIDE MARINE UNDERWRITERS, INC., et al.,** | ] | CV-00-N-2172-S |
| Defendant(s). | ] | |

## Memorandum of Opinion

### I.   Introduction

This cause comes to be heard on the motion of defendants, Worldwide Marine Underwriters, Inc. ("Worldwide Marine") and Robert Luellen ("Luellen"), for summary judgment[1] as to all claims asserted by the plaintiffs/cross-claimants, Merritt & Furman Insurance Agency, Inc. ("Merritt & Furman") and Frank Smith ("Smith"). After careful

---

[1] The motion for summary judgment was filed in the Florida action (CV-00-N-2172-S) on April 22, 1999 (Doc. #38), and in the Alabama action (CV-96-N-3166-S) on June 9, 2000 (Doc. #125).



consideration of the arguments on counsel, the relevant law, and the record as a whole, the court finds that the motion is due to be granted in part and denied in part.

## II. Facts[2] and Procedural Posture

This case arises out of an accident at sea involving a 1987 Gulfstar sloop ("Ariel II") and an ensuing insurance coverage dispute between the Ariel II's owner, Eladio Ruiz de Molina ("Ruiz de Molina") and his marine insurance carriers, brokers, and agents. The dispute has resulted in two independent but related lawsuits, both of which are currently pending before this court. On the court's own motion, the actions will be consolidated.

### A.   The Alabama Action - CV-96-N-3166-S

Merritt & Furman is a corporation organized and existing under the laws of the State of Florida with its principal place of business in Pompano Beach, Broward County, Florida. Smith is a resident of Pompano Beach and, at all times relevant to the events giving rise to this action, was a licensed agent acting as an employee of Merritt & Furman. Worldwide Marine is a corporation organized and existing under the laws of the State of Michigan. Luellen is a resident of Michigan who was an insurance agent employed by GUBA Marine, an insurance brokerage firm in Michigan. On or after the formation of Worldwide Marine on December 4, 1995, Luellen was an employee of Worldwide Marine.

In August or September of 1995, Ruiz de Molina, an Alabama resident, telephoned Smith at his Pompano Beach office to inquire about insuring the Ariel II. Over the course

---

[2] In developing the statement of facts in this opinion, the court considered the facts proposed by the parties and the court's own examination of the evidentiary record. These are the "facts" for purposes of this opinion only. They may not be the actual facts. *Cox v. Administrator United States Steel & Carnegie*, 17 F.3d 1386, 1400 (11th Cir. 1994), *cert. denied*, *USX Corp. v. Cox*, 114 S. Ct. 900 (1995).

of the next few months, Smith and Luellen had numerous communications concerning Ruiz de Molina's request for insurance. According to Smith, Luellen advised him, via telephone, that an insurance "binder" could be issued to Ruiz de Molina and, from his office in Pompano Beach, Smith sent a binder by fax to Ruiz de Molina in Alabama indicating that coverage would be effective that day, December 6, 1995. On or about December 9, 1995, while in route from Fairhope, Alabama, to Ft. Myers, Florida, the Ariel II was damaged by a storm at sea. Unfortunately, despite the various communications between Smith and Luellen, Ruiz de Molina had no insurance to cover damages sustained by the Ariel II.

On December 4, 1996, Ruiz de Molina filed suit in the Northern District of Alabama against Worldwide Marine, Robert Luellen, Merritt & Furman, and Frank Smith. As to defendants Wordwide Marine and Luellen, Ruiz de Molina alleged that they had breached their contract of insurance, negligently, wantonly, willfully or recklessly caused him to be denied benefits under the policy of insurance, fraudulently represented that his coverage was bound as of December 6, 1995, and denied his insurance claim in bad faith. With respect to defendants Merritt & Furman and Smith, Ruiz de Molina alleged that they had breached their contract to procure insurance for him and negligently or innocently misrepresented the effective date of the insurance coverage. Merritt & Furman and Smith then filed a cross claim against Worldwide Marine and Luellen alleging breach of contract, negligence and fraud, and demanding judgment for "any sums as to which Merritt & Furman and/or Smith may be adjudged liable" to Ruiz de Molina.

By order entered June 26, 1998, this court dismissed all claims against Luellen and Wordwide Marine, without prejudice, for lack of *in personam* jurisdiction. The case then

proceeded to trial against the remaining defendants - Smith and his agency, Merritt & Furman. The jury found Merritt & Furman liable for breach of contract, and Merritt & Furman and Smith liable for negligence and innocent misrepresentation. The jury rejected any finding of wanton or reckless fraudulent conduct. Damages were assessed at $59,774.53 on the breach of contract claim against Merritt & Furman, and a total of $136,170.28 on the other counts against both defendants, which included $90,000.00 in mental anguish damages. This court subsequently reduced the damage award by $90,000.00 on the basis that damages for mental anguish are not recoverable on any of the claims on which the jury found the defendants liable. Ruiz de Molina appealed the dismissal of Luellen and Wordwide Marine as well as the striking of damages for mental anguish to the Eleventh Circuit Court of Appeals. The cross claimants, Smith and Merritt & Furman, likewise appealed the dismissal of Luellen and Wordwide Marine.

On March 30, 2000, the Eleventh Circuit Court of Appeals affirmed this court's reduction of the judgment against Smith and Merritt & Furman, but reversed as to the dismissal of Worldwide Marine and Luellen holding that these defendants "purposefully availed themselves of the benefits of selling an insurance contract to an Alabama resident thereby subjecting themselves to the specific jurisdiction of the Alabama courts over the cause of action which arose out of doing that business." *Ruiz de Molina v. Merritt & Furman Ins. Agency, Inc.*, 207 F.3d 1351 (11th Cir. 2000). Upon certification of the appellate court's decision, a status conference was conducted. There, the parties notified the court of the motion for summary judgment pending in the Florida action. (described in section B, *supra*). The parties agreed to submit their summary judgment submissions from the

Florida action for this court's consideration, and to brief the court on the choice of law applicable to the claims raised therein.

### B. The Florida Action - CV-00-N-2172-S

Soon after Luellen and Worldwide Marine were dismissed as party defendants, but prior to the time an appeal was taken, Smith and Merritt & Furman commenced an independent action against Luellen and Worldwide Marine in the United States District Court for the Southern District of Florida. The original complaint stated counts of negligence, fraud and breach of contract, and included the same factual allegations as were set out in the cross-claim filed in the Alabama action. Additionally, Merritt & Furman and Smith sought "judgment against [Worldwide Marine] and Luellen in an amount equal to any sum as to which Merritt & Furman and/or Smith may be adjudged liable in the Alabama action" to Ruiz de Molina. In September of 1998, an amended complaint was filed, adding various factual allegations and asserting claims of negligence, indemnity, fraud/suppression, and breach of contract. Moreover, Merritt & Furman and Smith sought reimbursement in the amount of the judgment entered against them and in favor of Ruiz de Molina in the Alabama action, as well as compensation for "damages and injury to business reputation" and "extreme emotional distress and mental anguish" arising from the adverse judgment.

On May 25, 2000, soon after the Eleventh Circuit's opinion in *Ruiz de Molina v. Merritt & Furman Ins. Agency, Inc.*, 207 F.3d 1351 (11th Cir. 2000) was issued as the mandate of the court, the Florida court transferred the action pending there to this court on the basis the claims asserted in the Florida action did not differ significantly from those

5

asserted in the cross claims pending in the Alabama action. Along with the transfer, this court inherited the defendants' motion for summary judgment as to all claims asserted by plaintiffs in the Florida action. As noted above, that same motion was filed and is currently pending, as to the similar allegations of the cross-claim asserted in the Alabama action. Therefore, while the court's analysis is directed toward the claims asserted in the Florida action, the court's findings and conclusions are equally applicable to the cross-claim pending in the Alabama action.

**III.  Summary Judgment Standard**

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. There is no requirement, however, "that the moving party

support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.* at 323.

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). The nonmoving party need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings. *Id.* at 324. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id*. at 322.

After the plaintiff has properly responded to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id*. at 249. His guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party

7

must prevail as a matter of law." *Id*. at 251-52; *see also Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 746 n.11 (1983) (indicating the standard for summary judgment is "[s]ubstantively . . . very close" to that for motions for directed verdict). However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). If the evidence is "merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted); *accord Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989).

Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. *Anderson*, 477 U.S. at 254; *Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are functions of the jury, and, therefore, "[t]he evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. The nonmovant need not be given the benefit of every inference but only of every reasonable inference. *Brown v. Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## IV.  Discussion

Worldwide Marine and Luellen contend that summary judgment is due to be granted in their favor on each of the counts against them because the state law claims asserted therein are merely claims for indemnity masquerading as tort claims and, as such, are barred under applicable law. In response, the plaintiffs maintain that their claim for

common law indemnity is indeed viable and, notwithstanding defendants' arguments to the contrary, their claims for breach of contract, negligence and fraud represent "separate and distinct" theories of recovery, all of which survive the pending motion for summary judgment.

In order to resolve the issues raised in the pending motion, the court must first determine whether plaintiffs' tort and breach of contract claims are, in actuality, claims for indemnity. Next, the court must ascertain the choice of law applicable to plaintiff's claims, indemnity or otherwise. Finally, applying the proper choice of law to plaintiffs' claim for indemnity, the court must determine whether a genuine issue of material fact exists as to any essential elements of that claim.

### A. Tort and Contract or Indemnity?

Count II of the amended complaint explicitly seeks common law indemnity from defendants for the judgment entered against plaintiffs and in favor of Ruiz de Molina in the Alabama action. Counts I, III and IV of the amended complaint, respectively, allege separate counts of negligence, fraud, and breach of contract. According to the defendants, notwithstanding plaintiffs' artfully crafted pleadings, "the actual nature of *all* of the plaintiffs' claims against defendants . . . in this action is that of *indemnity*." Specifically, defendants' assert that the adverse judgment in the Alabama action is not only the factual basis for the explicit indemnity count, but is also the extent of "direct economic loss" alleged by the plaintiffs in every other claim asserted in their amended complaint. Therefore, the defendants invite this court to construe the entire action as one for indemnification. The court will decline the invitation.

9

The plaintiffs argue, and the court agrees, that the defendants have offered no authority, binding or persuasive, which would warrant the court to disregard plaintiffs' additional theories of recovery and simply consider the entire action as one for indemnity. Indemnity, generally speaking, "is a right which inures to a person who has discharged a duty which is owed by him but which, as between himself and another, should have been discharged by the other." 42 C.J.S. Indemnity § 2 (1991 & Supp. 2000). "The right to indemnity stands upon the principle that everyone is responsible for the consequences of his own acts, and arises among parties exposed to liability by the action of another who, in equity or law, should make good the other's loss." *Id*. at § 3. Indemnity may arise either in contract or in tort, *See Humble Oil & Refining Co. v. Naquin*, 414 F.2d 912, 914 (5th Cir. 1969), but is an equitable remedy of a "separate and distinct nature from the tort or contract action which underlies it." 42 C.J.S. Indemnity § 3; *see also Cement Masons' Union Local No. 592 Pension Fund v. Fletcher*, 2000 WL 189947 (E.D. Pa. 2000) (recognizing that "[a] claim for indemnity is separate and distinct from the underlying claim").

To be sure, the plaintiffs here want to recoup the money they were required to pay Ruiz de Molina. However, the court is not convinced nor have the defendants demonstrated, that an action for indemnification is the only remedy available to the plaintiffs. Indeed, when examining recoverable damages, courts often use terms such as "naturally" and "ordinarily flow," or in the contract sense, phrases such as "arising naturally" or "contemplated by the parties." *See e.g. Florida E.C.R. Co. v. Peters*, 83 So. 559 (Fla. 1919); *Pinnacle Port Community Ass'n v. Orenstein*, 952 F.2d 375 (11th Cir. 1992). Given that a claim for common law indemnity is an equitable remedy separate and distinct from the

10

claim underlying it, and given that defendants have failed to show that the damages sustained by Merritt & Furman and Smith in the Alabama action could not in some way be said to either naturally flow from or arise out of the relationship between Luellen and Smith, the court can not convert plaintiffs' state law claims into claims for indemnity. The plaintiffs are simply proceeding, as they are permitted, under multiple theories of recovery.

### B. Choice of Law

A federal court sitting in diversity must apply the laws, including conflicts of law principles, of the state in which the court sits. *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938); *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496 (1941); *Goodwin v. George Fischer Foundry Systems, Inc.* 769 F.2d 708 (11th Cir. 1985). To determine which of Alabama's choice of law rules to apply, the court must first "ascertain the nature of the problem involved, i.e., is the specific issue at hand a problem of law of contracts, torts, property, etc." *Garcia v. Public Health Trust*, 841 F.2d 1062, 1064 (11th Cir. 1988). In the present case, as noted above, the plaintiffs have asserted claims for breach of contract, negligence, fraud and indemnity.

### 1. Contract Claims

Alabama follows the principle of *lex loci contractus* which, as a general rule, provides that a contract is governed by the law of the jurisdiction where it was executed. *American Nonwovens v. Non Wovens Eng'g, S.R.L.*, 648 So. 2d 565, 567 (Ala. 1994); *Bryant v. Cruises, Inc.*, 6 F. Supp. 2d 1314, 1321 (N.D. Ala. 1998). This general rule does not apply, however, where "the parties intend the law of some other place to govern" or when the contract "is to be wholly performed in some other place." *Ferris v. Jennings*, 851 F. Supp.

11

418, 421 (M.D. Ala. 1993). The plaintiffs contend that the contract at issue, a contract they characterize as one to "obtain and place" insurance on a vessel moored in Alabama, was intended to be performed in Alabama and, therefore, falls within the exception to the *lex loci contractus* doctrine. The defendants persuasively argue, however, that plaintiffs tend to blur the distinction between a contract to procure insurance and an actual insurance contract.

The plaintiffs have alleged that they entered into an implied contractual agreement with defendants whereby Luellen, an insurance broker, agreed to *procure* insurance through Britamco, a London based insurance carrier. According to plaintiffs, although the defendants signed off on the issuance of a binder to Ruiz de Molina, they failed to uphold their end of the bargain by actually procuring insurance through Britamco. The defendants argue, and the court tends to agree that plaintiffs' allegations, if proven to be true, would suggest a breach of an implied procurement contract, not a breach of a contract to actually insure Ruiz de Molina's vessel. Moreover, because the procurement contract was not executed in, or intended to be performed in, Alabama, the law of Alabama is inapplicable. Rather, as alleged by the plaintiffs, the procurement contract was to be performed in and, in fact, was purportedly executed in, the defendants' home state of Michigan. Accordingly, the plaintiffs' breach of contract claims are governed by Michigan law.

### 2. Tort Claims

The choice of law rule traditionally applied by Alabama in tort cases is *lex loci delicti* -- the law of the place where the injury occurred. *See Fitts v. Minnesota Mining & Mfg. Co.*, 581 So. 2d 819, 820 (Ala. 1991) ("Lex loci delicti has been the rule in Alabama for almost

100 years. Under this principle, an Alabama court will determine the substantive rights of an injured party according to the law of the state where the injury occurred."). To determine "where the injury occurred," Alabama courts look to the site of the injury from which the cause of action arises, not to the site of the wrongful conduct. *See Norris v. Taylor*, 460 So. 2d 151, 152 (Ala. 1984) (applying Kentucky law to cause of action for injury at Kentucky job site even though plaintiff's injuries derived from co-employees negligent selection of a defective ladder while still in Alabama).

In the present case, as a result of the defendants alleged tortious conduct, the plaintiffs have purportedly suffered economic losses, emotional distress and mental anguish, and damage to their business reputations. While the parties agree that the injuries described above occurred, if at all, in the state where the plaintiffs "suffered the economic impact," *Glass v. Southern Wrecker Sales*, 990 F. Supp. 1344, 1348 (M.D. Ala. 1998), they disagree as to whether that state is Florida or Alabama. On the one hand, the plaintiffs take the position that they suffered an economic impact in Alabama, the state where this court ordered them to pay damages to Ruiz de Molina. The defendants, on the other hand, argue that, to the extent plaintiffs suffered economic injuries, those injures were undoubtedly suffered in Florida, the state where Smith resides and where Merritt & Furman's business is located.

Although this court has yet to locate a case directly on point, the decision in *Glass v. Southern Wrecker Sales* is helpful. In *Glass*, an Alabama resident brought suit in Alabama against a truck dealer in Georgia for fraudulent suppression/misrepresentation in connection with the sale/purchase of a tow truck. *Glass*, 990 F. Supp. at 1347. The dealer

13

argued that, because the plaintiff actually purchased the truck in Georgia, Georgia substantive law should apply. *Id.* at 1348. In response, the plaintiff took the position that, because the representations that induced him to drive to Georgia and purchase the tow truck were made in Alabama, Alabama substantive law should control. *Id.* Applying the principles of *lex loci delicti*, the court pointed out that, as a result of purchasing a defective tow truck, the plaintiff alleged that he turned down "cash calls" and had given his business to other wrecker services. *Id.* Because plaintiff's business was located in Alabama, and his business allegedly suffered economic losses as a result of the dealer's fraudulent representations, the court concluded that "Alabama's rule of *lex loci delicti* requires application of Alabama law." *Id.*

In the present case, Merritt & Furman is a corporation organized and existing under the laws of the State of Florida with its principal place of business in Pompano Beach, Florida. Frank Smith is an individual resident of Pompano Beach, Florida who, at the time of the events giving rise to this cause of action, was a licensed agent of Merritt & Furman. Although the plaintiffs' reliance upon certain representations made by defendants may have contributed to the judgment entered against plaintiffs in Alabama, the court is convinced that any "mental anguish" and "loss of business reputation" flowing from that judgement and, indeed, the economic impact of the judgment itself, was suffered in Florida, the state where the plaintiffs' business, customers, and bank accounts are located. Accordingly, the court will apply Florida substantive law to plaintiffs' tort claims.

### 3. Indemnity Claim

As a general rule, the "body of law that governs a claim for indemnity or contribution usually is the same body of law that establishes the indemnitee's primary liability to the plaintiff." *Hardy v. Gulf Oil Corp.*, 949 F.2d 826, 830 n. 7 (5th Cir. 1992). Although the plaintiffs fail to specify, in their complaint, whether their alleged right to indemnity arises from the contract claims, tort claims, or both, their submission addressing choice of law issues suggests that the indemnity claim arises out of the negligence and fraud claims. (Plf. Brief at p. 9). Accordingly, the plaintiffs' claim for indemnity is governed by Florida law, the law which governs plaintiffs' fraud and negligence claims under Alabama's *lex loci delicti* rule.

### C. Are Defendants Entitled to Summary Judgment on the Indemnity Claim?

Having determined the choice of law applicable to plaintiffs' claims, the only issue remaining for consideration is whether defendants are entitled to summary judgment on plaintiffs' explicit request for indemnification. The court is convinced that summary judgment is due to be granted in favor of the defendants.

In *Houdaille Industries, Inc. v. Edwards*, 374 So. 2d 490 (Fla. 1979), the Florida Supreme Court was faced with the issue of whether a manufacturer of a defective product that contributes to an on-the-job injury of a workman may seek common law indemnity from the workman's employer. In *Houdaille*, the manufacturer of a steel cable had been found liable under a breach of warranty theory for a fatal injury sustained by Edwards. *Houdaille*, 374 So. 2d at 492. After judgment was entered in favor of Edwards, the manufacturer sought indemnity from Edward's employer. *Id*. The manufacturer alleged that the employer had

caused the injury to the employee by negligently failing to properly conduct the required detensioning process. *Id.*

The *Houdaille* court began its analysis by defining indemnity as "a right which inures to one who discharges a duty owed by him, but which, as between himself and another, should have been discharged by the other. . . ." Then, the court set out the following standard:

> Indemnity rests upon the fault of another which has been imputed to or constructively fastened upon the one seeking indemnity, and there can be no indemnity between joint tortfeasors. A weighing of the relative fault of tortfeasors has no place in the concept of indemnity for the one seeking indemnity must be without fault. Indemnity can only be applied where the liability of the person seeking indemnity is solely constructive or derivative and only against one who, because of his act, has caused such constructive liability to be imposed.

*Id.* at 493 (internal citations omitted). In keeping with the holding above, the court concluded that the right to indemnity derives only from a special relationship between the parties which has obligated one party to pay because of its vicarious, constructive, derivative or technical liability for the wrongful acts of the other. *See id; Dade County Sch. Bd. v. Radio Station WQBA,* 731 So. 2d 638 (Fla. 1999).

Here, in the Alabama action, a jury found Merritt & Furman liable for breach of contract, and found both Merritt & Furman and Smith guilty of active, primary negligence and of misrepresentation.[3] Thus, it cannot be said that the plaintiffs here were somehow

---

[3] In the Alabama action, the verdicts against Merritt & Furman and Smith were based on explicit jury findings of fault on the part of those parties. The case was submitted to the jury solely on the plaintiff's theory that Merritt & Furman and Smith were negligent toward him; not that they were vicariously liable for someone else's fault. In fact, the charge given to the jury did not mention vicarious or derivative liability, nor any special relationship between the parties which make up this action.


without fault. Moreover, the court is convinced that a question of fact does not exist as to whether a special relationship existed between Merritt & Furman and Smith and Worldwide Marine and Luellen. The record is void of any significant evidence which indicates that the plaintiffs could in some way be only "vicariously, constructively, derivatively or technically liable" for the alleged wrongful acts of Worldwide Marine and Luellen. Thus, there is no recognizable right to indemnity. *See Houdaille Industries, Inc. v. Edwards*, 374 So. 2d 490 (Fla. 1979). Accordingly, the defendants are entitled to summary judgment as to the plaintiffs' explicit claim for indemnity.

**V.  Conclusion**

The court will enter an appropriate order granting Worldwide Marine and Luellen's motion for summary judgment as it relates to the indemnity claim and denying it as it relates to the other claims asserted by Merritt & Furman and Smith.

Done, this 12th of July, 2001.

_____
EDWIN NELSON
UNITED STATES DISTRICT JUDGE